## COHEN v. DORF.

(Supreme Court, Appellate Term, First Department.   October 25, 1916.)

MASTER AND SERVANT ☞80(10)—CONTRACT OF EMPLOYMENT—ACTION—VERDICT.

In an action on a contract of employment, fixing plaintiff's salary at 3 per cent. of the total amount of goods of a new line about to be manufactured by defendant, evidence *held* not to support the verdict for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 119; Dec. Dig. ☞80(10).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from City Court of New York, Trial Term.

Action by Julius Cohen against Max Dorf. From a judgment for plaintiff, and an order denying defendant's motion for new trial, defendant appeals. Judgment reversed, and new trial ordered.

Argued October term, 1916, before GUY, BIJUR, and SHEARN, JJ.

John L. Bernstein, of New York City (Louis Weinberger and John L. Bernstein, both of New York City, of counsel), for appellant.

Jacob Manheim, of New York City, for respondent.

GUY, J. The action is upon a written contract under which the plaintiff was employed by the defendant, for the term beginning January 1 and ending April 30, 1915, as cutter, manager, and supervisor of a new or special line of ladies' wearing apparel not theretofore manufactured by the defendant; plaintiff's salary or compensation being fixed at 3 per cent. "of the total amount of goods of the new line" about to be manufactured by the defendant under the name of the Consolidated Coat & Suit Company sold and paid for during the term provided for. The contract further provided that the plaintiff should receive each week an advance of $25 on account of his salary, that at the end of the term an accounting should be had between the parties to determine the amount due by either to the other, and that the plaintiff should have no claim against the defendant for goods sold by him in the business which was being carried on by the defendant at the time of the making of the contract.

Plaintiff alleges in his complaint that after the payment of his salary of $25 a week during the contract period the defendant is indebted to him under the terms of the contract in the sum of $1,375, for which he demands judgment. Defendant's figures show that plaintiff had received over $100 in excess of the salary to which he was entitled under the agreement, but he interposed no counterclaim for the alleged excess.

Defendant filed the necessary certificate in the county clerk's office to enable him to carry on business under the name of the Consolidated Coat & Suit Company, but by mutual agreement the contract was modified, and the defendant used his own name in connection with the new line of goods. It was conceded that, as far as the rendition of services were concerned, plaintiff had performed the terms of his contract, and the only issue litigated was what portion of defendant's receipts represented his income from the business on which the plaintiff claimed he was entitled to receive 3 per cent.

Plaintiff testified that before he signed the contract he asked the defendant what he meant by the "new or special line" mentioned therein, and that defendant replied "spring coats and spring suits," the spring goods that he was going to manufacture; that at that time the defendant was manufacturing pile fabrics—that is, winter goods; that the new line was to be spring coats and spring suits, but that plaintiff did not supervise any business that the defendant conducted before his employment; that the defendant made or sold only one line of spring coats and suits.

On behalf of the defendant it was testified that the plaintiff was employed in connection with a line of spring coats which was better than that turned out by the defendant; that the highest price of the spring goods manufactured by the defendant was $9, and the price of the special line in connection with which the defendant was employed ran from $9 to $15; that defendant had been in business 25 years, and had manufactured a spring line every year during that time; that defendant had his sample line of spring goods ready in December, and he showed it to the plaintiff; that to distinguish the two lines of spring goods the new special line made up by the plaintiff ran from 500, whereas defendant's regular line ran 1,500, 1,600, 1,700; and that it was at the plaintiff's suggestion, because defendant's name was better known than the name Consolidated Coat & Suit Company, that the business was done under the defendant's name. Defendant's traveling salesman testified that he had been selling spring goods for the defendant every year during his employment of three years prior to January, 1915; that after the plaintiff was employed the defendant's salesman got the additional samples made by the plaintiff, but "the garments did not go."

It appears from the defendant's books, and their correctness was conceded by the plaintiff, that the total receipts of defendant for spring goods amounted to $34,845.50; that of this sum the receipts from the special line upon which the plaintiff worked amounted to $3,630.82, and $6,593.17 from the extra work upon which plaintiff was employed by the defendant; and it followed that, in the absence of a finding that plaintiff was entitled to 3 per cent. on $34,845.50—that is, the receipts for all of the spring goods—judgment should go for the defendant.

The question submitted to the jury by the trial judge was whether the new line included all the spring coats and suits made by defendant during the contract period, or only those which the plaintiff cut, supervised, and managed during that time. After the jury retired, they asked the court whether they could bring in a verdict for the plaintiff for less than $657.36, being the percentage on the defendant's receipts for all of his spring goods, less $425, paid plaintiff, with interest, to which the court replied that the verdict should be either for the defendant, or for $657.36 for the plaintiff. Whereupon they returned a verdict for the plaintiff for $657.36.

The verdict in favor of the plaintiff necessarily includes the finding by the jury that defendant's new line included goods upon which the plaintiff did no work and with which he had absolutely nothing to do. Only the opposite conclusion could properly be reached on the evidence presented. It is evident, therefore, that in arriving at their verdict the jury must have been influenced by either sympathy for plaintiff or prejudice against the defendant.

It follows that the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.